## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEPHEN GILL,
459 Highland Street, Apt. #1
Marshfield, Massachusetts 02050

        Plaintiff,

v.

UNITED STATES OF AMERICA
950 Pennsylvania Avenue NW
Washington, D.C. 20530

and

MARK A. MILLER, in his individual capacity,
c/o Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

and

KATE WILSON, ALISON HODGKINS,
UNKNOWN NAMED MARSHAL BEARING
ALIAS "TALL PAUL," UNKNOWN
NAMED MARSHAL BEARING ALIAS
"GREG," and NINETEEN UNKNOWN
NAMED MARSHALS OF THE U.S.
MARSHALS SERVICE, in their individual
capacities,
c/o U.S. Marshals Service D/DC-S
Moultrie Court House
500 Indiana Avenue NW, Room C-600
Washington, D.C. 20001

and

MARK S. MARTINS, in his individual
capacity,
c/o Defense Legal Services Agency
1600 Pentagon Pedestrian Tunnel
Washington, D.C. 20301

and

Civil Action No. 18- 2380

**JURY TRIAL DEMANDED**

VANCE H. SPATH, in his individual capacity,
c/o U.S. Air Force
1670 Air Force Pentagon
Washington, D.C. 20330-1670

                    Defendants.

## COMPLAINT

This is a civil rights action raising constitutional claims under the Fourth Amendment against federal officials pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, for Defendants' unlawful actions on or about October 17, 2016 through October 19, 2016, arising from the unlawful issuance and execution of a "warrant of attachment" upon Plaintiff Stephen Gill, a civilian defense attorney and witness, at his home in Massachusetts, in connection with the military commission proceeding in *United States of America v. Abd Al-Rahim Hussayn Muhammad Al-Nashiri*, taking place in Guantanamo Bay, Cuba ("*Al-Nashiri* military commission").

## JURISDICTION

1.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the Fourth Amendment to the United States Constitution and the FTCA, 28 U.S.C. §§ 1346 & 2671-2680.  The FTCA also confers jurisdiction pursuant to 28 U.S.C. § 1346(b)(1).

## VENUE

2.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia,

pursuant to 28 U.S.C. § 1346(b)(1) because this is a civil action against the United States for

personal injury arising out of conduct of a United States employee, and pursuant to 28 U.S.C.

§ 1346(e)(1)(B) because this is a civil action in which a defendant is an officer or employee of

the United States or any agency thereof acting in his official capacity or under color of legal

authority, or an agency of the United States, or the United States, in which a substantial part of

the events or omissions giving rise to the claim occurred.

3.   Alternatively, if there is no district in which an action may otherwise be brought as

provided in 28 U.S.C. § 1391, then venue in this Court is proper pursuant to 28 U.S.C.

§ 1391(b)(3) because the United States is subject to this Court's personal jurisdiction with

respect to this action.

## PARTIES

4.   Plaintiff Stephen Gill ("Plaintiff" or "Mr. Gill") is a resident of the Commonwealth of

Massachusetts, and is a citizen of the United States. At all times relevant hereto, Mr. Gill was

and is a civilian.

5.   Defendant United States of America ("Defendant United States" or "United States") is

within the jurisdiction of this Court. It is responsible for the agency actions of its components

Department of Justice ("DOJ"), which includes the U.S. Marshal's Service ("USMS"), and the

Department of Defense ("DoD"), which includes the Department of the Army ("Army") and

Office of Military Commissions.

6.   Defendant Kate Wilson ("Defendant Wilson"), Defendant Alison Hodgkins ("Defendant

Hodgkins"), Defendant Unknown Named Marshal Bearing Alias "Tall Paul," Defendant

Unknown Named Marshal Bearing Alias "Greg," and Defendants Nineteen Unknown Named

Marshals of the U.S. Marshals Service (collectively, "Defendant Marshals"), are sworn officers

who are employed by the USMS. At the time of the events at issue, all Defendant Marshals were acting within the scope of their employment and under color of law of the United States. Defendant Marshals are being sued in their individual capacities.

7.  Defendant Mark A. Miller is sworn officer who is employed by DOJ ("Defendant Miller"). At the time of the events at issue, Defendant Miller was acting within the scope of his employment and under color of law of the United States. Defendant Miller is being sued in his individual capacity.

8.  Defendant Mark S. Martins is sworn officer who is employed by DoD ("Defendant Martins"). At the time of the events at issue, Defendant Martins was acting within the scope of his employment and under color of law of the United States.  Defendant Martins is being sued in his individual capacity.

9.  Defendant Vance H. Spath is sworn officer who is employed by DoD ("Defendant Spath"). At the time of the events at issue, Defendant Spath was acting within the scope of his employment and under color of law of the United States. Defendant Spath is being sued in his individual capacity.

## **FACTS**

10. On September 28, 2011, Office of Military Commissions Convening Authority, Bruce MacDonald, convened a U.S. military commission for investigating the United States' capital charges against Abd Al-Rahim Hussayn Muhammad Al-Nashiri in relation to the attack on the USS COLE (DDG-67) on October 12, 2000.

11.  In 2014, Vaughn Ary replaced Bruce MacDonald as the Office of Military Commissions Convening Authority.

4

12. Pursuant to the Military Commissions Act, *as amended*, 10 U.S.C. §§ 948, *et seq.,* Pub. L. 111-84, 123 Stat. 2574 (Oct. 28, 2009), U.S. military commissions are not Article III courts under the United States Constitution; but, rather, are Article I tribunals created by Congress.

13. Mr. Gill was an officer and judge advocate in U.S. Navy Reserves who was mobilized on active duty at the Office of the Convening Authority for the Office of the Military Commissions for period of 340 days commencing January 2, 2015.

14. Defendant Spath, who was a U.S. Air Force Colonel and the *Al-Nashiri* military commission judge, entered a Disqualification Order on or about March 4, 2015, removing the Office of Military Commissions Convening Authority, Vaughn Ary, and a number of workers in the Office of Convening Authority from the *Al-Nashiri* military commission. Mr. Gill was not named in the Disqualification Order and the same did not apply to Mr. Gill.

15. After entry of the Disqualification Order of March 4, 2015, while mobilized on active duty with the Office of the Military Commissions Office of the Convening Authority, Mr. Gill was made to serve as "Legal Advisor *pro tempore*" for the *Al-Nashiri* military commission.

16. During March through April 2015, Mr. Gill reported on three separate occasions to superiors in the Office of the Convening Authority that federal employees were violating the terms of the Disqualification Order.

17. Within a few days of Mr. Gill's third report that federal employees were violating the terms of the Disqualification Order, Mr. Gill was reassigned to another military command for a period of 32 days, effective April 28, 2015.

18. While on temporary duty at the other military command, Mr. Gill made a fourth report on April 30, 2015, to Defendant Martins that federal employees were violating the terms of the Disqualification Order. Defendant Martins is a U.S. Army Brigadier General and the Chief

Prosecutor of the Office of Military Commissions Office of the Chief Prosecutor, which is overseen by the Defense Legal Services Agency.

19. Within 24 hours of Mr. Gill's fourth reporting of ongoing violations of the Disqualification Order to Defendant Martins, orders were issued to demobilize Mr. Gill from active duty, commencing May 1, 2015.

20. On or about May 4, 2015, Mr. Gill received orders to demobilize from active duty, and he returned to civilian status on or about May 30, 2015. Thereafter, Mr. Gill returned to his home in Massachusetts to resume his civilian career.

21. On or about May 8, 2015, in the *Al-Nashiri* military commission, defense counsel for Mr. Abd Al-Rahim Hussayn Muhammad Al-Nashiri filed *Defense Renewed Motion to Dismiss for Unlawful Influence (AE 332X)*, seeking Mr. Gill as a witness at a requested evidentiary hearing.

22. Mr. Gill requested to give video testimony at either the Naval War College in Newport, Rhode Island or be placed on active duty orders to appear personally in Guantanamo Bay, Cuba.

23. Office of Military Commissions Office of the Chief Prosecutor's victim witness coordinators, including Ms. Kimberly Goebelbecker and Ms. Karen Loftus, informed Mr. Gill that he could give his testimony as a civilian, without active duty orders, by video teleconference ("VTC") from the Naval War College in Newport, Rhode Island.

24. In early September 2016, Mr. Gill and Office of Military Commissions Office of the Chief Prosecutor made arrangements for Mr. Gill to testify by VTC as a civilian at the Naval War College in Newport, Rhode Island on September 7, 2016.

25. On or about September 6, 2016, the Office of Military Commissions Office of the Chief Prosecutor's victim witness coordinators told Mr. Gill he must come to Washington, D.C. on September 7, 2016 to testify, but Mr. Gill was not issued a subpoena.

26. On September 7, 2016, Mr. Gill, in his civilian capacity, voluntarily traveled from Massachusetts to the Mark Center, 4800 Mark Center Drive, Alexandria, Virginia 22311, pursuant to civilian invitational travel orders.  He delivered testimony via VTC from the Mark Center in the *Al-Nashiri* military commission, and he returned to Massachusetts that same evening.

27. After cross-examination by a prosecutor with the Office of Military Commissions Office of the Chief Prosecutor, the Defendant Spath instructed Mr. Gill that he would need to testify again at another time, and set the date from October 17-21, 2016.

28. Defendant Spath specifically asked Mr. Gill if he would prefer to give VTC testimony from the Boston area instead of the D.C. area. Mr. Gill informed Defendant Spath he had originally planned to give his September 7, 2016 testimony at the War College in Newport, Rhode Island, but that he had been instructed by the Office of Military Commissions Office of the Chief Prosecutor's victim witness coordinators on one days notice to instead make travel plans for the Mark Center in Virginia.

29. After his September 7, 2016 testimony, Mr. Gill filed a claim for travel reimbursement but there were significant delays in the Office of the Military Commission's processing of the reimbursement.

30. In preparation for the resumption of his testimony between October 17-21, 2016, Mr. Gill spoke with Defendant Kate Wilson on or about October 12, 2016, about USMS arranging service of a military commission subpoena at his attorney's office in Marshfield, Massachusetts.

31. On or about October 13, 2016, Mr. Gill received a military commission subpoena, and associated papers, including a money order, at his attorney's office in Marshfield, Massachusetts.

32. Domini S. McDonald of the Office Military Commission Office of the Chief Prosecutor, delivered some of the papers to Mr. Gill, including a money order, and Defendant Hodgkins of the Defendant United States' U.S. Marshals Service also delivered some of the papers to Mr. Gill.

33. Among the papers was a one-page document, Military Commission Form 453, entitled "SUBPOENA" "subscribed at Guantanamo Bay, Cuba this 11th day of October 16" and bearing a type-written "signature" of Defendant Martins. The "SUBPOENA" purported to require Mr. Gill to appear on October 17, 2016, at the Mark Center, Alexandria, Virginia.

34. After receiving the "subpoena," on October 16, 2016, Mr. Gill sent by certified mail/return receipt requested, as well as via e-mail, an application for relief from the "subpoena" under applicable military commissions rules to Defendant Spath via Defendant Martins. Mr. Gill's application for relief from the "subpoena" under applicable military commissions rules consisted of a five page memorandum of law with several exhibits, including the original military commission subpoena, all original associated papers, and the original money order which Mr. Gill had marked: "VOID."

35. On or prior to October 17, 2016, Defendant Miller and Defendant Martins made an *ex parte* request to seize with force, detain, imprison, and otherwise compel the appearance of Mr. Gill in the *Al-Nashiri* military commission for Mr. Gill's purported failure to respond to the "subpoena."  Defendant Miller and Defendant Martins' *ex parte* request is entitled *Government's Request for Issue of Warrant of Attachment in Support of AE332X (AE 332PP)*.

36. Defendant Miller and Defendant Martins asserted to Defendant Spath in *Government's Request for Issue of Warrant of Attachment in Support of AE 332X (AE 332PP)* that subject matter jurisdiction exists for the issuance and execution of a "warrant of attachment" to seize

with force, detain, imprison, and otherwise compel the appearance a civilian U.S. citizen to

compel testimony at a military commission by officials of the DoD and its component, Office of

Military Commissions, and officials of DOJ and its component, USMS.

37. Concerning the use of force, Defendant Miller and Defendant Martins asserted in

*Government's Request for Issue of Warrant of Attachment in Support of AE332X (AE 332PP)*

that "[R.M.C. 703(e)(2)(G)(iv)] specifies that only non-deadly force as may be necessary to

bring Mr. Gill before a commission may be used and that Mr. Gill shall be brought before a

military commission without delay and shall testify as soon as practicable and be released."

38. On October 17, 2016, Mr. Gill did not appear in Alexandria, Virginia because he did not

receive any response to his application for relief from the "subpoena" under applicable military

commissions rules.

39. On October 17, 2016, Defendant Spath failed and refused to afford Mr. Gill notice and

opportunity to be heard on his application for relief from the "subpoena," and instead issued a

"warrant of attachment" to the U.S. Marshals Service to enforce the "subpoena" pursuant to Rule

for Military Commission 703(e)(2)(G), requiring Mr. Gill's attendance at the Mark Center.

Specifically, the "warrant of attachment" issued by Defendant Spath, in part, states:

> NOW, THEREFORE, by virtue of the power vested in me, the undersigned as
> military judge of said Military Commission, by Military Commissions Act
> 1 0 U.S.C. § 949j(a)(2), Articles 46 and 47 of the Uniform Code of Military
> Justice, and Rule for Military Commission 703(e)(2)(G), you are hereby
> commanded and empowered to apprehend and attach the said Stephen Dennis Gill
> wherever he may be found within the United States, its territories and possessions,
> and forthwith bring him before this said Military Commission at the Mark Center,
> 4800 Mark Center Drive, Alexandria, Virginia 22350 between the date to
> 19 October 2016 to testify as required by said subpoena.

40. On October 18, 2016, at approximately 1:00 p.m., upon information and belief,

Defendant Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias

"Tall Paul," Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of Defendants Nineteen Unknown Named Marshals of the U.S. Marshal Service in riot gear, together with about five unnamed uniformed municipal police officers from the Town of Marshfield, Massachusetts, stormed Mr. Gill's home with assault rifles and hand guns drawn and pointed at Mr. Gill attendant to the execution of the unlawful military commission "warrant of attachment" issued by Defendant Spath at the request of Defendant Miller and Defendant Martins in the *Al-Nashiri* military commission. Upon information and belief, these actions were coordinated, ordered and/or approved by DOJ, USMS and/or DoD officials located within Washington, D.C.

41. When Mr. Gill opened the door he observed that the USMS officers closest to the door had blast shields and were pointing handguns at Mr. Gill, and those behind them were pointing military grade assault rifles at Mr. Gill.

42. As part of the raid, there were a number of black SUVs, grey SUVs, unmarked cars, and police cars on his front yard, in the street, and the driveway.

43. The Defendant USMS officers yelled at Mr. Gill to put his hands up and to turn around and to get on his knees.

44. Mr. Gill, fearing for his life and safety, peacefully complied and was forcibly handcuffed.

45. These event caused Mr. Gill to suffer extreme shock, fear, emotional distress, and mental trauma.

46. Three to four Defendant USMS officers, including Defendant Wilson went through Mr. Gill's house searching every room. For what they were searching for is unknown given the subpoena was to secure Mr. Gill's physical presence and he was already detained.

47. Mr. Gill's person was searched and in addition to the handcuffs, Mr. Gill was forcibly placed in waist shackles and ankle shackles.

48. Upon his request, Mr. Gill was given a shirt, shoes, and his eyeglasses by Defendant Marshals, but was denied his mobile phone, wallet and medication.

49. Defendant Marshals went through Mr. Gill's wallet and removed his driver's license but refused to give him the wallet. Defendant Marshals also took Mr. Gill's house keys.

50. The time of Mr. Gill's seizure by deadly force was approximately 1:03 p.m. on October 18, 2016.

51. Mr. Gill was loaded in a vehicle and driven to the U.S. District Courthouse, 1 Courthouse Way, Boston Massachusetts 02210, by Defendant Wilson and Defendant Unnamed Marshal Bearing Alias "Tall Paul."

52. At no time during Mr. Gill's seizure by deadly force did the Defendant USMS officers show Mr. Gill any "warrant of attachment" or other warrant.

53. After his seizure by deadly force, the Defendant USMS officers detained Mr. Gill inside a holding cell in the basement of the U.S. District Courthouse in Boston.

54. After a period of detention believed by Mr. Gill to be between one to three hours, one of the Defendant Nineteen Unknown Named Marshals of the USMS drove Mr. Gill in handcuffs with Defendant Wilson and Defendant Unknown Named Marshal Bearing Alias "Tall Paul," to Logan Airport in Boston, Massachusetts, where Defendant Wilson and Defendant Unknown Named Marshal Bearing Alias "Tall Paul," boarded a commercial flight with Mr. Gill still in handcuffs and flew to Reagan National Airport, Arlington, Virginia.

55. After arriving at Reagan National Airport, Defendant Wilson and Defendant Unknown Named Marshal Bearing Alias "Tall Paul" turned Mr. Gill over to two of the Defendant Nineteen

Unknown Named Marshals of the USMS who added waste shackles and ankle shackles to the handcuffs binding Mr. Gill, and brought him to the Alexandria County Detention Center at 2001 Mill Road, Alexandria, Virginia 22314, around 10:00 p.m. or 11:00 p.m.

56. Mr. Gill spent the night in the Alexandria County Detention Center as if a common criminal.  The cell was kept cold and the lights were left on all night by Alexandria County Detention Center personnel.

57. No law enforcement personnel provided Mr. Gill with any food from the time of his arrest at 1:03 p.m. until around midnight when Alexandria County Detention Center personnel finally provided Mr. Gill, upon his request, with a deconstructed sandwich consisting of a few slices of bologna and two slices of white bread in a plastic bag.

58. On Wednesday, October 19, 2016, Mr. Gill was transported in handcuffs, waist shackles, and ankle shackles to the Mark Center in Alexandria, Virginia, by a different set of two of the Defendant Nineteen Unknown Named Marshals and then turned over to a different set of three of the Defendant Nineteen Unknown Named Marshals.

59. The set of three of the Defendant Nineteen Unknown Named Marshals, accompanied by a DoD police officer, took Mr. Gill and placed him into a locked conference room with VTC capabilities.

60. The set of three of the Defendant Nineteen Unknown Named Marshals did not remove Mr. Gill's restraints until moments before his testimony.

61. Samantha Chen, an employee of the Office of the Military Commissions, remained with Mr. Gill in the locked conference room and observed Mr. Gill prior to his testimony.

62. While on the VTC with the *Al-Nashiri* military commission, and before beginning his testimony, Mr. Gill described his seizure by deadly force and detention to Defendant Spath and

further stated that his testimony was inherently unreliable because Mr. Gill was "not well" and under "extreme duress." Mr. Gill told Defendant Spath how the Defendant USMS officers forcibly removed him from his home with deadly force, forced him to travel hundreds of miles in handcuffs and shackles, and detained him all night in a cold jail cell with the lights on and without his medication.

63. Defendant Spath questioned Mr. Gill to determine whether he was competent to testify. During questioning, Mr. Gill referred to his application for relief from the "subpoena" under applicable military commissions rules and attempted to argue that the "warrant of attachment" was unlawful, but Defendant Spath refused to hear argument, denying Mr. Gill notice and opportunity to be heard.

64. Defendant Spath disconnected the VTC link and took Mr. Gill off VTC while he discussed Mr. Gill's competency issue with Mr. Al-Nashiri's defense counsel and Defendant Miller. After the discussion, Defendant Spath put Mr. Gill back on VTC and administered a competency exam to Mr. Gill, which Mr. Gill passed, and redirect examination of Mr. Gill by Mr. Al-Nashiri's defense counsel commenced.

65. Shortly thereafter, while Mr. Gill was under redirect examination, Federal Public Defender for the U.S. District Court for the Eastern District of Virginia, Geremy Kamens, transmitted a letter to Mr. Gill that was delivered to the *Al-Nashiri* military commission, citing *Ex parte Merryman*, 17 F.Cas. 144, 149 (C.C.D. Md. 1861) and advising Mr. Gill of his right to counsel based on the military detention of a civilian U.S. citizen during a time of peace.

66. During Mr. Gill's redirect examination, Defendant Spath learned of Mr. Kamens' letter to Mr. Gill, paused Mr. Gill's testimony, and blacked-out the VTC feed to prevent Mr. Gill from hearing or seeing anything happening in the *Al-Nashiri* military commission court room.

67. Defendant Spath denied Mr. Gill access to counsel.

68. Defendant Spath explicitly instructed Mr. Al-Nashiri's defense counsel to not inform Mr. Gill of Mr. Kamens' letter until after Mr. Gill finished his testimony.

69. After Mr. Gill finished providing testimony, Defendant Spath informed Mr. Gill of Mr. Kamens' letter and electronically transmitted to Defendant USMS officers and Mr. Gill a document entitled, *Discharge of United States Marshals Service from Duties Attendant to the Execution of a Warrant of Attachment*, and a copy of Mr. Kamens' letter to Mr. Gill.

70. After his testimony, Mr. Gill remained detained in the locked conference room for approximately 15 to 30 minutes, which was under guard by at least two DoD police officers. Thereafter, under armed guard, DoD police officers escorted Mr. Gill to the Mark Center's security office.

71. The Defendant USMS officers failed to offer Mr. Gill any assistance in returning to his home in Massachusetts.

72. At approximately 11:30 a.m., when Mr. Gill finished providing testimony all he had in his possession was his driver's license and house keys. He had no wallet, cash or credit cards, mobile phone or medication.

73. At this point, around 11:30 a.m., Mr. Gill was still in Alexandria, Virginia, hundreds of miles from his home in Marshfield, Massachusetts, with no means to return. Mr. Gill was not provided with any means to contact anybody, or with food and drink for that day other than a cup of coffee. For more than two hours, while being detained in the custody of DoD police officers in the Mark Center security office, Mr. Gill repeatedly requested that the officials who detained him provide him with a meal, transportation to Regan National Airport, a plane ticket back to Boston,

Massachusetts, and funds for transportation from Boston Logan Airport to Marshfield, Massachusetts.

74. In response to Mr. Gill's requests, Office of Military Commissions Office of the Chief Prosecutor's victim witness coordinator, Josiel Uc, eventually relented and booked a flight for Mr. Gill that was scheduled to depart from Regan National Airport at about 3:30 p.m. and scheduled to arrive at Logan Airport in Boston, Massachusetts, at about 5:00 p.m. on October 19, 2016.

75. While remaining detained in the custody of DoD police officers in the Mark Center security office, Mr. Gill continued to request that Mr. Uc provide Mr. Gill with a meal, transportation to Regan National Airport, and funds for transportation from Boston Logan Airport to Marshfield, Massachusetts. Eventually, Mr. Uc relented and provided Mr. Gill with $300.00 cash and Mr. Gill was escorted out of the Mark Center by Mr. Uc and a DoD police officer.

76. Mr. Gill ultimately returned home between 10:00 p.m. or 11:00 p.m. on October 19, 2016, after being away from his home against his will for more than 24 hours.

77. Since the time of his forcible detention, Mr. Gill has suffered from extreme emotional trauma as a result of the actions of the Defendants.

78. On December 15, 2016, at Guantanamo Bay, Cuba, during a Rules for Military Commissions Rule 803 Session in the *Al-Nashiri* military commission, Defendant Spath and Defendant Martins engaged in an oral exchange memorialized at page 7667 of the United States' *Unofficial/Unauthenticated Transcript of the Al Nashiri Motions Hearing Dated 12/15/2016 from 11:23 AM to 11:42 AM* as follows:

```
1      MJ [Col SPATH]: And I have seen it, because in my time
2      doing courts-martial I have never seen a writ of attachment go
```

3      so fast as what happened with Gill. I attribute that to the
4      U.S. Attorney and the U.S. Attorney's office.
5      CP [BG MARTINS]: I would ask you to be cautious about
6      what you attribute it to. There is important ----
7      MJ [Col SPATH]: There is no way that happened without
8      people using their positions of authority rightfully.
9      CP [BG MARTINS]: Thank you.
10     MJ [Col SPATH]: I have begged for writs of attachment in
11     my other job, begged, and it's taken weeks, months, or never.
12     CP [BG MARTINS]: The writ of attachment example is a good
13     one.
14     MJ [Col SPATH]: It is. All I am saying is you have the
15     authority ----
…

79. Defendant Spath and Defendant Martins oral exchange shows that Department of Justice officials, Defendant Miller, Defendant Martins, Defendant Spath, Defendant Marshals, and others engaged in peculiar conduct attendant to the issuance and execution of the unlawful "writ of attachment" against Mr. Gill, and strongly suggests that Defendant Miller, Defendant Martins, Defendant Spath improperly used their positions of authority in concert with the Department of Justice and others to ensure execution of the unlawful "writ of attachment" by Defendant Marshals against Mr. Gill.

80. The Defendants' treatment of Mr. Gill, which received significant media coverage, also caused a reputational loss to Mr. Gill, an attorney in private practice, and has caused him difficulty in securing new clients and/or seeking gainful employment.

81. The Defendants' treatment of Mr. Gill adversely affected Mr. Gill's performance as a candidate for public office in Massachusetts.

82. The Defendants' treatment of Mr. Gill has caused the U.S. Navy Reserve to exclude Mr. Gill from performing Navy funeral honors detail drills, which has caused Mr. Gill to suffer economic damages in the forms of lost wages and loss of retirement point credits.

83. The Defendants' treatment of Mr. Gill has caused the U.S. Navy Reserve to exclude Mr. Gill from performing Navy active duty mobilizations, which has caused Mr. Gill to suffer economic damages in the forms of lost wages and loss of retirement point credits.

84. The Defendants' treatment of Mr. Gill has caused the U.S. Navy Reserve to no longer recommend Mr. Gill for retention.

85. The Defendants' treatment of Mr. Gill has caused the U.S. Navy Reserve involuntarily retire Mr. Gill as of August 1, 2017.

86. Plaintiff's FTCA claim was timely submitted via e-mail using Standard Form 95 on or about November 20, 2017, to Defendant DOJ and its componentUSMS seeking personal injury damages totaling $1,375,000. Receipt was acknowledged on November 20, 2017.

87. Plaintiff's FTCA claim was timely submitted via e-mail using Standard Form 95 on November 20, 2017, to Defendant DoD and its component, Office of Military Commissions, seeking personal injury damages totaling $1,375,000. A hard copy was later mailed via certified mail, return-receipt, and receipt was acknowledged on December 26, 2017, Defendant DoD later asserted that Plaintiff's FTCA claim was received on January 9, 2018.

88. Defendant DOJ/USMS designated Defendant DoD as the lead agency to handle Plaintiff's FTCA claim.

89. Defendant United States and its components failed to render a final disposition of Mr. Gill's FTCA claim within six months after his FTCA claim was presented. Pursuant to 28 U.S.C. § 2675(a), this failure constitutes a final disposition and constructive denial of Plaintiff's FTCA claim.

**Count I – Violation of Fourth Amendment Rights/*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)**
**<u>(Defendant Marshals, Defendant Miller, Defendant Martins and Defendant Spath)</u>**

90. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

91. Mr. Gill has a constitutionally protected right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures by government officers, including searches of his home, searches of his person, and seizure of his person carried out in an unreasonable manner.

92. The actions of Defendant USMS officers, including the manner in which they entered Mr. Gill's home using overwhelming deadly force to threaten his life by pointing more than fifteen military-grade assault rifles and handguns at Mr. Gill, with no suspicious activity or probable cause for Mr. Gill to have committed a crime, and the manner in which Defendant USMS officers forcibly searched and seized Mr. Gill's person with handcuffs, waist shackles, and ankle shackles, violated Mr. Gill's rights under the Fourth Amendment to the United States Constitution.

93. Mr. Gill has a constitutionally protected right under the Fourth Amendment to the United States Constitution to be free from warrantless searches and seizures by government officers, including searches of his home, searches of his person, and seizure of his person carried out pursuant to unlawful "warrants of attachment" sought and issued without subject matter jurisdiction by Department of Defense officials in U.S. military commissions, including Defendant Miller, Defendant Martins, and Defendant Spath.

## Count II – FTCA, 28 U.S.C. §§ 1346, 2671-2680, Trespass
## (Defendant United States)

94. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

95. On October 18, 2016, Defendant Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias "Tall Paul," Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of Defendants Nineteen Unknown Named Marshals unlawfully entered Mr. Gill's property during the execution an unlawful "warrant of attachment" sought and issued without subject matter jurisdiction in the *Al-Nashiri* military commission by DoD officials in U.S. military commissions, including Defendant Miller, Defendant Martins, and Defendant Spath. These Defendant USMS officers unlawfully entered Mr. Gill's home, including each and every room, without a valid warrant and without showing Mr. Gill a valid warrant to search of his property. These Defendants also searched Mr. Gill's person without a valid warrant and without showing Mr. Gill a valid warrant to search his person.

96. Under the FTCA, Defendant United States is liable for actions taken by its agents, officials and employees acting under color of their employment with the United States.  Because Defendant Miller, Defendant Martins, Defendant Spath, Defendant Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias "Tall Paul," Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of Defendants Nineteen Unknown Named Marshals acted within the scope of their employment as officers of the federal government, the United States is liable for damages resulting to Mr. Gill from these Defendants' actions.

**Count III – FTCA, 28 U.S.C. §§ 1346, 2671-2680, False Arrest**
**(Defendant United States)**

97. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

98. On October 18, 2016, during the execution of an unlawful "warrant of attachment" sought and issued without subject matter jurisdiction by Department of Defense officials, including Defendant Miller, Defendant Martins, and Defendant Spath, in the *Al-Nashiri* military commission, Defendant Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias "Tall Paul," Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of Defendants Nineteen Unknown Named Marshals, in riot gear, entered Mr. Gill's home using overwhelming deadly force by pointing more than 15 military-grade assault rifles and handguns at Mr. Gill. Mr. Gill's home was located in a peaceful neighborhood with low crime rates, and there was no suspicious activity or probable cause for Mr. Gill to have committed a crime. The military-grade weapons pointed at Mr. Gill by these Defendant USMS officers severely restricted Mr. Gill's freedom of movement and threatened his life. These Defendant Marshals forcibly seized Mr. Gill with handcuffs, waist shackles, and ankle shackles and searched Mr. Gill's person.

99. Under the FTCA, Defendant United States is liable for actions taken by its agents, officials and employees acting under color of their employment with the United States. Because Defendant Miller, Defendant Martins, Defendant Spath, Defendant Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias "Tall Paul," Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of Defendants Nineteen Unknown Named Marshals acted within the scope of their employment as officers of the federal government, the United States is liable for damages resulting to Mr. Gill from these Defendants' actions.

### Count IV – FTCA, 28 U.S.C. §§ 1346, 2671-2680, False Imprisonment
### (Defendant United States)

100.  Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

101.  On October 18, 2016, the Defendant Marshals confined Mr. Gill in a cell in the basement of the U.S. federal courthouse in Boston, Massachusetts, transported him against his will, handcuffed and shackled, to Virginia, and facilitated his overnight imprisonment at the Alexandria County Detention Center pursuant to an unlawful "warrant of attachment" sought and issued without subject matter jurisdiction by DoD officials, including Defendant Miller, Defendant Martins, and Defendant Spath, in the *Al-Nashiri* military commission, until Mr. Gill was released in Virginia on October 19, 2016.

102.  Under the FTCA, Defendant United States is liable for actions taken by its agents, officials and employees acting under color of their employment with the United States. Because Defendant Miller, Defendant Martins, Defendant Spath, Defendant Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias "Tall Paul," Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of Defendants Nineteen Unknown Named Marshals acted within the scope of their employment as officers of the federal government, the United States is liable for damages resulting to Mr. Gill from these Defendants' actions.

### Count V – FTCA, 28 U.S.C. §§ 1346, 2671-2680, Abuse of Process
### (Defendant United States)

103.  Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

104.  Defendants' unlawful actions of searching Mr. Gill's person and home, and seizing, detaining, transporting, and imprisoning Mr. Gill from October 17-19, 2016, attendant to the

issuance and execution of an unlawful "warrant of attachment" without subject matter

jurisdiction in connection with the *Al-Nashiri* military commission constituted abuse of process.

105.  Under the FTCA, Defendant United States is liable for actions taken by its agents, officials

and employees acting under color of their employment with the United States.  Because Defendants

acted within the scope of their employment as officers of the federal government, the United States is

liable for damages resulting to Mr. Gill from these Defendants' actions.

### Count VI – FTCA, 28 U.S.C. §§ 1346, 2671-2680, Abuse of Process: Deadly Force<br>(Defendant United States)

106.  Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1

through 89 above as if fully set forth herein.

107.  Even assuming that subject matter jurisdiction existed to render lawful the "warrant of

attachment" sought and issued by Defendant Miller, Defendant Martins, and Defendant Spath,

by using deadly force in the execution of the "warrant of attachment" upon Mr. Gill, Defendant

Wilson, Defendant Hodgkins, Defendant Unknown Named Marshal Bearing Alias "Tall Paul,"

Defendant Unknown Named Marshal Bearing Alias "Greg," and approximately eleven of

Defendants Nineteen Unknown Named Marshals abused process.

108.  Under the FTCA, Defendant United States is liable for actions taken by its agents, officials

and employees acting under color of their employment with the United States.  Because Defendants

acted within the scope of their employment as officers of the federal government, the United States is

liable for damages resulting to Mr. Gill from these Defendants' actions.

### Count VII – FTCA, 28 U.S.C. §§ 1346, 2671-2680, Abuse of Process: Denial of Right to Counsel<br>(Defendant United States)

109. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through

89 above as if fully set forth herein.

110. On October 19, 2016, during Mr. Gill's detention and compelled examination in the *Al-Nashiri* military commission pursuant to an unlawful "warrant of attachment" that had been sought, issued and executed without subject matter jurisdiction to do so, Defendant Spath denied Mr. Gill's access to the Federal Public Defender for the U.S. District Court for the Eastern District of Virginia.

111.  Defendant Spath's denial of Mr. Gill's right to counsel constituted abuse of process.

112.  Under the FTCA, Defendant United States is liable for actions taken by its agents, officials and employees acting under color of their employment with the United States. Because Defendant Spath acted within the scope of his employment as an officer of the federal government, the United States is liable for damages resulting to Mr. Gill from Defendant Spath's actions.

## Count VIII – FTCA, 28 U.S.C. §§ 1346, 2671-2680, Intentional Infliction of Emotional Distress (Defendant United States)

113.  Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

114.  Defendants engaged in, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Mr. Gill. As a proximate result of the acts alleged herein, Mr. Gill suffered severe or extreme emotional distress.

115.  Under the FTCA, Defendant United States is liable for actions taken by its agents, officials and employees acting under color of their employment with the United States.  Because Defendants acted within the scope of their employment as officers of the federal government, the United States is liable for damages resulting to Mr. Gill from Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1.   Order that the actions of Defendant Marshals, Defendant Miller, Defendant Martins, and/or Defendant Spath violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and constituted false arrest, false imprisonment, abuse of process, abuse of process due to use of deadly force, abuse of process due to denial of right to counsel, intentional infliction of emotional distress, and/or trespass for which the Defendant United States is liable under the Federal Tort Claims Act;

2.   Award Plaintiff damages in the amount not exceeding $1,375,000, against the Defendant United States;

3. Award Plaintiff compensatory damages and punitive damages against Defendant Marshals, Defendant Miller, Defendant Martins, and/or Defendant Spath in their individual capacities in an amount commensurate with the proof adduced at trial; and

4.   Grant Plaintiff such other and further relief as this Honorable Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Date:   October 16, 2018

Respectfully submitted,


_____/s/_____

Mark S. Zaid
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com

Attorneys for Plaintiff